IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LESLIE D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 1:25-cv-136-BN |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This case filed under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (the "Commissioner") is proceeding before the undersigned United States magistrate judge for all purposes. *See* N.D. TEX. SPEC. ORD. NO. 3-350.

The Commissioner denied Plaintiff Leslie D.'s claim for disability insurance benefits, and Plaintiff argues that the Commissioner's decision should be reversed, and this case remanded for further proceedings, because the administrative law judge ("ALJ") failed to support the residual functional capacity ("RFC") with any medical opinion and improperly relied on the ALJ's own interpretation of the evidence. *See generally* Dkt. No. 18.

The Commissioner filed a brief in response, *see* Dkt. No. 22, and Plaintiff replied, *see* Dkt. No. 23.

And, for the following reasons, the Court affirms the hearing decision.

## Legal Standards

"To qualify for Title II disability-insurance benefits, a claimant must prove a 'disability,' meaning a 'medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.'" *Hicks v. Comm'r, Soc. Sec. Admin.*, No. 24-10826, 2025 WL 1166147, at *1 (5th Cir. Apr. 22, 2025) (per curiam) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (in turn citing 42 U.S.C. § 423(d)(1)(A))).

"The Commissioner employs a sequential, five-step inquiry to determine whether a claimant is disabled," *id.* at *2 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)), under which the considerations are:

> (1) whether the claimant is "doing substantial gainful activity;" (2) whether the claimant has "a severe medically determinable physical or mental impairment" of sufficient duration; (3) if so, whether her impairment meets or equals a listing in the regulatory appendix; (4) if not, whether the claimant can perform her "past relevant work" given her "residual functional capacity" (RFC); and (5) if not, whether the claimant can adjust to other work given her RFC, age, education, and work experience.

*Id.* at *2 n.5 (citations omitted).

"The claimant bears the burden of proof until the last step, when the burden shifts to the Commissioner." *Id.* at *2 (citing *Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024)).

And a federal court's review of the Commissioner's "determinations 'is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence.'" *Id.* (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th

Cir. 2012) (per curiam); citing 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")).

"Substantial evidence means 'more than a scintilla, but it need not be a preponderance.'" *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); citing *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[Substantial evidence] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)))).

**Analysis**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence where it's not supported by a medical opinion and the ALJ instead relied on the ALJ's own interpretation of the evidence. *See generally* Dkt. No. 18.

The Commissioner contends that "the ALJ was not required to base the physical RCF on a medical opinion for the finding to be supported by substantial evidence." Dkt. No. 22 at 3.

To frame this alleged error, it's helpful to first set out the ALJ's analysis at step four:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that the claimant cannot climb; and cannot work at unprotected heights or with hazardous moving machinery.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other

evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant has alleged disability on the basis of stage 1 breast cancer, a heart condition, anxiety, and depression (1E/2). In the adult function reports, the claimant asserted that her immune system is nonexistent, making her continually ill; that the medicines required for her breast cancer cause joint pain and affect her sleep; that she has pain over the lymph node removal area; that she has a heart condition; that she has depression that makes it hard for her to get out of bed; and that she has ringing in her ears that makes it difficult to concentrate or multitask (5E/1; 8E/1). According to the claimant, her conditions affect her ability to hear, remember, complete tasks, concentrate, and understand (5E/6; 8E/6). The claimant further stated that she can walk two to three blocks before needing to stop and rest; that she can pay attention for thirty minutes; that she does not finish what she starts; and that she does not handle stress or changes in routine well (5E/6-7; 8E/6-7). However, the claimant acknowledged that she occasionally cares for her grandchild; that she cares for her dog; that she has no problem with her personal care; that she does not require personal care or medication reminders; that she can prepare meals; that she can perform some household chores; that she is able to go shopping in stores; that she can drive; and that she can handle money (5E/2-4; 8E/2-4). The claimant further noted that she spends time with others in person and via email; that she attends Bible study and church; that she does not need to be reminded to go places; that she does not need to be

accompanied by others; that she does not have any problems getting along with family, friends, neighbors, or others; and that she does not have issues getting along with authority figures (5E/5-6; 8E/5-6).

At the hearing, the claimant testified that she has constant ringing in her ears, which is a big distraction, and makes it hard for her to focus and concentrate (Hearing Testimony). The claimant noted that she got her ears checked, but there was no damage (Hearing Testimony). In addition, the claimant explained that she was diagnosed with breast cancer in August 2021; that she had surgery to removed lymph nodes, followed by radiation; that she is currently in complete remission; and that she remains under surveillance (Hearing Testimony). With regard to her heart, the claimant asserted that she was born with a congenital heart condition that required open heart surgery twenty-three years ago to replace valves (Hearing Testimony). The claimant noted that she sometimes has heart palpitations and takes magnesium (Hearing Testimony). Furthermore, the claimant testified that she experiences fatigue and difficulty sleeping at night, and that due to this, she has to lie down and nap in the afternoon for two to three hours (Hearing Testimony). Concerning her mental health, the claimant stated that she experiences depression and anxiety (Hearing Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Turning to the medical evidence, the claimant has been diagnosed with aortic valve stenosis, as well as other cardiomyopathies (4F/16; 8F/7, 10, 12). Records indicate that the claimant has a history of aortic valve replacement and aortoplasty (1F/1; 4F/11; 7F/2; 8F/2). An echocardiogram in February 2021 found mildly reduced left ventricle systolic function; left ventricle ejection fraction of 45-50%; mild to moderate aortic regurgitation; mild mitral regurgitation; mild to moderate tricuspid regurgitation; and mild pulmonic regurgitation (1F/1). An electrocardiogram in May 2022 revealed a sinus rhythm with premature supraventricular complexes, but was otherwise normal (8F/8). An echocardiogram in July 2022 showed an ejection fraction of 45-50%; mildly reduced left ventricle systolic function; mildly increased left ventricle wall thickness; mild to moderate aortic regurgitation; and mild to moderate mitral regurgitation (8F/25). Meanwhile, an echocardiogram in June 2024 showed an ejection fraction of 35-40%; moderately reduced left ventricle systolic function; mild to moderate aortic regurgitation; moderate to severe mitral regurgitation; mild to

moderate tricuspid regurgitation; and a moderate elevation of estimated right ventricle systolic pressure (8F/30). While the claimant's echocardiography demonstrated a moderate to severe mitral insufficiency, the claimant's valve replacement has been noted to be stable (8F/12). Cardiovascular examinations have observed the claimant to have a regular heartrate and rhythm, normal heart sounds, and no murmur, rubs, or gallop (3F/9, 4F/8, 15, 19, 26, 32, 36, 48; 6F/10; 7F/3, 7, 11, 15, 22, 26; 8F/10, 20). The claimant has also been noted to have no edema (4F/26, 36, 48; 7F/11; 8F/21). At times, the claimant has reported having palpitations (8F/18). In general, however, the claimant has denied chest paid, palpitations, syncope, and edema (3F/8, 4F/8, 14, 25, 35, 47; 6F/10; 7F/3, 7, 15, 21; 8F/10, 20, 23). Indeed, medical records indicate that the claimant has no symptoms attributable to valvular heart disease (8F/7, 18, 23). The claimant has been prescribed medications such as Magnesium Oxide (7F/3). Due to the claimant's cardiomyopathies, she has been advised to undergo a left and right heart catheterization with possible percutaneous coronary intervention (8F/12).

Next, the claimant has been diagnosed with essential hypertension (3F/8, 8F/21). On occasion, the claimant has had elevated blood pressure levels (8F/20). The claimant has been prescribed medications such as Metoprolol and Losartan for this condition (4F/7; 7F/3; 8F/5). At times, the claimant has had blood pressure readings within normal limits (3F/8; 4F/8, 29; 7F/3; 8F/10). The claimant has also reported good blood pressure readings overall (8F/7, 23). Medical records have described the claimant's hypertension as benign and adequately controlled (8F/10, 21).

The claimant has also been diagnosed with mixed hyperlipidemia (8F/8). Records indicate that the claimant has had slightly elevated cholesterol levels (8F/7, 13). The claimant has been noted to be intolerant of statin therapy, and is on chronic pharmacology therapy (8F/12, 21).

Finally, the claimant's medical records indicate that she is obese, with a body mass index over thirty (4F/19, 29, 7F/11, 15). This was considered in accordance with SSR 19-2p. The evidence does not describe limitations due to obesity alone. However, obesity can have an impact on musculoskeletal impairments by placing extra stress on the back or joints. This was considered when crafting the residual functional capacity above.

Consultative examiner G.A. Jason Simpson, Psy.D., performed a psychological evaluation on September 20, 2022 (9F). During the evaluation, Dr. Simpson observed that the claimant had a normal mood and affect, normal speech, and the ability to respond to prompts as given (9F/2). The claimant was also alert and oriented (9F/2). The claimant

was able to count forward in sevens to fifty-six, backwards in threes from one hundred to ninety-one, and could do simple arithmetic (9F/3). According to Dr. Simpson, the claimant had average abstract reasoning and average concrete abilities; fair judgment; unimpaired perceptions; a generally intact memory, and average intelligence (9F/4). Based on the evaluation, Dr. Simpson provided a provisional diagnosis of major depressive disorder and adjustment disorder with anxiety (9F/5).

The claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence. For example, the claimant has alleged disability on the basis of stage 1 breast cancer (1E/2). However, records show that the claimant had a successful lumpectomy, that the cancer had not spread to her lymph nodes, and that there has not been a recurrence (4F/7, 69; 7F/5). In addition, the claimant's cancer does not meet the durational requirement to be a severe impairment. The claimant has also alleged that she has a heart condition (1E/2; Hearing Testimony). Despite this, the claimant has consistently denied any cardiovascular symptoms (3F/8, 4F/8, 14, 25, 35, 47; 6F/10; 7F/3, 7, 15, 21; 8F/10, 20, 23). The claimant has also been noted to have a regular heartrate and rhythm, normal heart sounds, and no murmur, rubs, or gallop (3F/9, 4F/8, 15, 19, 26, 32, 36, 48; 6F/10; 7F/3, 7, 11, 15, 22, 26; 8F/10, 20). As to her hypertension, medical records indicate that it is adequately controlled (8F/21). With regard to her mental health, the claimant has alleged experiencing depression and anxiety (1E/2; Hearing Testimony). Nonetheless, mental status examinations in the record have observed the claimant to have an appropriate mood and affect (4F/8, 15, 26, 36, 48; 9F/2; 7F/4, 8, 11, 15, 22; 8F/21). The claimant has further been noted to be alert and oriented (4F/8, 15, 26, 36, 48; 9F/2; 7F/15, 22; 8F/10, 21), to be pleasant (4F/19, 22, 29, 31; 7F/26), to have normal thought content and cognitive functioning (3F/9, 6F/10), to have an intact memory (4F/26, 36, 48), and to have appropriate judgment and insight (4F/26, 36, 48). Accordingly, the claimant's allegations are not entirely consistent with the objective medical evidence and other evidence of record.

As for medical opinions and prior administrative medical findings, the undersigned will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from the claimant's medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings in this case as follows.

State agency medical consultant Kavitha Reddy, M.D. performed the initial disability determination as to the claimant's physical impairments on October 8, 2022 (2A). Dr. Reddy found that the

claimant's physical impairments were not severe (2A/3). This finding is less persuasive. While Dr. Reddy supported the finding with a review and explanation of the available evidence (2A/3), the finding is not entirely consistent with the record as a whole, including later-received evidence. For example, the record contains abnormal echocardiograms (1F/1; 8F/25, 30), as well as evidence of a past aortic valve replacement (1F/1; 4F/11; 7F/2, 8F/2). The claimant has also been diagnosed with hypertension and has had elevated blood pressure (3F/8, 8F/20-21). Furthermore, body mass index measurements indicate that the claimant is obese (4F/19, 29; 7F/11, 15). This evidence supports the existence of a severe impairment, as well as the residual functional capacity above.

State agency psychological consultant Jean Germain, Ph.D., performed the initial disability determination as to the claimant's mental impairments on November 26, 2022 (2A). Dr. Germain found that the claimant's mental impairments were not severe, and assessed mild limitations in all four "paragraph B" functional areas (2A/3-4). This finding is persuasive. Dr. Germain supported the finding with a review and explanation of the evidence (2A/4). The finding is also consistent with the record as a whole, which includes grossly normal mental status examinations. For instance, the claimant has been observed to have an appropriate mood and affect (4F/8, 15, 26, 36, 48; 9F/2; 7F/4, 8, 11, 15, 22; 8F/21), to be alert and oriented (4F/8, 15, 26, 36, 48; 9F/2; 7F/15, 22; 8F/10, 21), to be pleasant (4F/19, 22, 29, 31; 7F/26); to have normal thought content and cognitive functioning (3F/9, 6F/10), to have an intact memory (4F/26, 36, 48), and to have appropriate judgment and insight (4F/26, 36, 48).

State agency medical consultant Julie Shamma, D.O., performed the reconsideration disability determination as to the claimant's physical impairments on December 7, 2023 (4A). Dr. Shamma determined that there was insufficient evidence to assess the claim (4A/3). Because Dr. Shamma did not provide any limitations or otherwise assess the claim, the undersigned need not articulate how the statements of Dr. Shamma were considered in terms of persuasiveness.

State agency psychological consultant Brian McIntyre, Ph.D., performed the reconsideration disability determination as to the claimant's mental impairments on December 9, 2023 (4A). Dr. McIntyre determined that there was insufficient evidence in the file to assess the claim (4A/4). Because Dr. McIntyre did not provide any limitations or assess the claim, the undersigned need not articulate how the statements of Dr. McIntyre were considered in terms of persuasiveness.

On September 20, 2022, Dr. Simpson performed a psychological consultative examination (9F). Dr. Simpson expressed the opinion that the claimant appeared capable of basic personal, social, and significantly

> limited occupational adjustments (9F/5). This opinion is only persuasive to the extent it is consistent with non-severe mental impairments. Dr. Simpson supported the opinion with an examination of the claimant, which noted only mildly limited to normal functioning (9F/4-5). The opinion is also consistent with the record, which shows that claimant has had an appropriate mood and affect (4F/8, 15, 26, 36, 48; 7F/4, 8, 11, 15, 22; 8F/21), has presented as alert and oriented (4F/8, 15, 26, 36, 48; 7F/15, 22; 8F/10, 21), has been described as pleasant (4F/19, 22, 29, 31; 7F/26), has demonstrated normal thought content and cognitive functioning (3F/9; 6F/10), has exhibited an intact memory (4F/26, 36, 48), and has displayed appropriate judgment and insight (4F/26, 36, 48). The undersigned also notes that the opinion is non-specific, which lessens its persuasiveness.
>
> In summary, the record as a whole – the medical evidence, the opinion evidence, and the claimant's testimony – supports a finding that the claimant's physical impairments cause the limitations described in the residual functional capacity assessment. Specifically, the claimant's reports and testimony of heart palpitations, a congenital heart condition, and fatigue; abnormal echocardiograms; abnormal blood pressure readings; and evidence of obesity, all support a limitation to light work, with no climbing; and no working at unprotected heights or with hazardous moving machinery.

Dkt. No. 14-1 at 28-32.

There is no doubt that "[a]n 'ALJ is responsible for determining an applicant's residual functional capacity.'" *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *accord Garrett R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-829-D-BK, 2023 WL 5418301, at *3 (N.D. Tex. July 20, 2023) ("The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence." (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam))), *rec. adopted*, 2023 WL 5415283 (N.D. Tex. Aug. 22, 2023).

> In doing so, the ALJ "examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." "Notably, though, ALJs are no longer required to give

> controlling weight to a treating physician's opinion, as was mandated by federal regulations and our caselaw in the past." Instead, an ALJ considers a list of factors articulated in 20 C.F.R. § 404.1520c to decide "what weight, if any, to give to a medical opinion."

*Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam) (quoting *Webster*, 19 F.4th at 718).

> [And t]he RFC determination is a "combined medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources.

*Hess v. Kijakazi*, Civ. A. No. 22-5305, 2023 WL 8696374, at *8 (E.D. La. Oct. 20, 2023) (footnotes omitted), *rec. adopted*, 2024 WL 1231327 (E.D. La. Mar. 22, 2024).

And, so, "[t]here is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:22-cv-3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (quoting *Carson v. Comm'r of Soc. Sec.*, No. 6:21cv12, 2022 WL 2525438, at *7 (E.D. Tex. May 25, 2022)), *rec. adopted*, 2022 WL 16927799 (N.D. Tex. Nov. 14, 2022).

This makes sense because the RFC assessment itself "is not a medical opinion." *Carson*, 2022 WL 2525438, at *7 (citing *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)).

And, again, "[u]nlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion

statements in the record." *Id.* (citing 20 C.F.R. § 404.1529); *see, e.g.*, *Robert D.D.*, 2022 WL 16935248, at *4 ("The ALJ articulated the reasons for her persuasiveness findings, incorporated Dr. Curtis' finding that Plaintiff had severe mental limitations and imposed more restrictive limitations than those found by the SAPCs. Although the ALJ's mental RFC finding does not mirror the SAPC's medical opinions, 'it cannot be said that [the ALJ's] decision was not based on substantial evidence.'" (quoting *Webster*, 19 F. 4th at 71)).

Here, Plaintiff contends that the ALJ's determination that Plaintiff "cannot climb[ ] and cannot work at unprotected heights or with hazardous moving machinery" was not supported by substantial evidence because the ALJ did not rely on any medical opinions supporting these limitations. Dkt. No. 18 at 9. Plaintiff argues that, after the ALJ rejected most of the medical opinions in the record, "the ALJ had no other physical opinion evidence to guide the construction of the RFC." *Id.*

The Court disagrees.

Dr. Shamma and Dr. McIntyre both determined that there was insufficient evidence to assess the claim. Dkt. No. 14-1 at 31. And, so, the ALJ could not rely on those opinions. *See id.*

The ALJ found Dr. Germain's opinion that Plaintiff's mental impairments were not severe to be persuasive. *See id.* And the ALJ found Dr. Simpson's opinion to be persuasive only with respect to non-severe mental impairments. *See id.* at 32.

But Dr. Germain and Dr. Simpson opined on Plaintiff's mental impairments, not on Plaintiff's physical impairments. *See Tyria R. v. Saul*, No. 3:19-cv-109-S-BH,

2020 WL 10050779, at *12 (N.D. Tex. Mar. 6, 2020) ("Here, the ALJ did not explain how he determined that Plaintiff was able to lift and carry no more than ten pounds occasionally and less than ten pounds frequently; stand and walk to up to hours out of an eight hour workday; [and] never kneel or crawl.... None of [the] medical evidence [he considered] addressed the effects of her physical conditions on her ability to work...."), *rec. adopted*, 2020 WL 1434516 (N.D. Tex. Mar. 23, 2020).

But the ALJ also found Dr. Reddy's opinion regarding Plaintiff's physical impairments to be "less persuasive" and "not entirely consistent with the record as a whole, including later-received evidence." Dkt. No. 14-1 at 31. And the ALJ found, contrary to Dr. Reddy's finding that Plaintiff physical impairments were not severe, that the "evidence supports the existence of a severe impairment, as well as the residual functional capacity above." *Id.*

Where an ALJ completely rejects all the medical opinions in the record, and them makes an RFC determination, that determination is not supported by substantial evidence. *See, e.g.*, *Garrett R.*, 2023 WL 5418301, at *4 ("The problem with the ALJ's RFC finding is, as Plaintiff argues, that the ALJ rejected the only medical opinion addressing or touching on Plaintiff's conditions' effects on his ability to work and instead relied on progress notes and the longitudinal record, which in themselves do not address Plaintiff's work limitations. And, while the ALJ considered evidence of Plaintiff's daily activities, it is difficult to decipher the connection between these activities and the ALJ's determination about the effect of Plaintiff's impairments on his ability to hold down a full-time job. In sum, the ALJ improperly

made an RFC finding with no supporting medical opinion that purports to address the effects of Plaintiff's impairments on his ability to perform work-related tasks." (citing *Ripley*, 67 F.3d at 557 n.27 ("Without reports from qualified medical experts, however, we cannot agree that the evidence substantially supports the conclusion that Ripley was not disabled because we are unable to determine the effects of Ripley's condition, no matter how 'small,' on his ability to perform sedentary work."))); *see also id.* ("Judges of this court have consistently found that an ALJ contravenes *Ripley* under the circumstances presented here." (collecting cases)); *Griffin v. O'Malley*, No. SA-23-cv-1090-FB, 2025 WL 440284, at *7 (W.D. Tex. Jan. 17, 2025) ("The Fifth Circuit has made clear that an ALJ 'may not – without opinions from medical experts – derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.'" And "[n]umerous district courts have relied on this principle in vacating RFC determinations that are not supported by an actual medical opinion and instead are based on the ALJ's subjective interpretation of the medical data in the record." (quoting *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam) (citing *Ripley*, 67 F.3d at 557–58); collecting cases)).

But there is a "critical difference between outright rejecting all medical opinions before creating an RFC based solely on the ALJ's own interpretation of the medical evidence and an ALJ's finding that a medical source opinion is somewhat persuasive while adding additional limitations." *Hess*, 2023 WL 8696374, at *9 (collecting cases); *compare id.* at *10 ("This was not a *Ripley* error. The ALJ did not

reject entirely all of the medical opinions and independently interprets the raw medical data to craft an RFC based solely on his own interpretation of medical data and without any supporting medical opinion; rather, he found the medical opinions somewhat persuasive and relied on them, coupled with other record evidence, to exercise of his responsibility to determine the Claimant's RFC based on all of the evidence of record." (footnote omitted)) *and Moreira v. Comm'r of Soc. Sec. Admin.*, EP-24-cv-21-KC-MAT, 2025 WL 1090895, at *5 (W.D. Tex. Feb. 27, 2025) ("In the instant case, the ALJ's RFC is supported by substantial evidence because the ALJ conducted a persuasiveness analysis for each medical opinion and incorporated this analysis into Plaintiff's RFC. Plaintiff's assertion – that as in *Ripley* and *Williams*, the ALJ rejected all the medical opinions on record and relied on their lay opinion – is misplaced because the ALJ did not fully reject each medical opinion."), *rec. adopted*, 2025 WL 943413 (W.D. Tex. Mar. 28, 2025) *with Tiede v. Dudek*, 770 F. Supp. 3d 965, 973 (W.D. Tex. 2025) ("The Commissioner also cites Fifth Circuit case law as support for the propositions that medical opinions are not determinative and that ALJs need not adopt an RFC from a medical opinion. *See Webster*, 19 F.4th at 719; *Thompson v. Soc. Sec. Admin.*, No. 23-30702, 2024 WL 1886757, at *2 (5th Cir. Apr. 30, 2024); *Miller*, 2023 WL 234773, at *4. The Court agrees with these propositions – but they are inapposite to this case. None of these cases concluded that an ALJ could properly determine a claimant's RFC without any medical opinion being present in the record. The ALJ therefore erred in making an RFC determination based on her own interpretation of the medical evidence, rather than developing the record." (cleaned

up)).

Here, rather than finding Dr. Reddy's opinion to be unpersuasive, the ALJ found the opinion to be "less persuasive" and "not entirely consistent" with the evidence on the record. Dkt. No. 14-1 at 31. "This could hardly constitute a 'rejection' of the opinions." *Bednorz v. Kijakazi*, No. MO:22-cv-111-DC-RCG, 2023 WL 6147858, at *6 (W.D. Tex. Aug. 3, 2023) (citing *Rodriguez v. Comm'r*, No. 4:23-cv-175-BP, 2023 WL 4207451, at *5 (N.D. Tex. June 27, 2023) (distinguishing "rejected" opinion from "partially persuasive" opinion)); *accord Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-28-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (finding no *Ripley* error where ALJ found medical opinions to be "less persuasive" because "ALJs can reach a valid RCF even if the SAMC reports were based on marginally deficient medical records"), *rec. adopted*, 2022 WL 2972240 (N.D. Tex. July 26, 2022).

And, so, the Court cannot find that the ALJ rejected all medical opinions in the record and committed a reversable *Ripley* error. *See Hess*, 2023 WL 8696374, at *10 (This is not a case where the ALJ completely rejected entirely all medical opinions of record and was left to craft an RFC based solely on his own medical conclusions. Rather, after finding the state agency medical consultants' opinions somewhat persuasive, the ALJ considered additional, later record evidence to add limitations more favorable to claimant. Even with those added, more favorable limitations, however, the ALJ still concluded that Claimant failed to establish that she had been under a disability.").

## Conclusion

The hearing decision is AFFIRMED.

SO ORDERED.

DATED: September 9, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE